FIRST NATIONAL BANK OF OLNEY

v.

WILLIAM BEAIRD.

</div>

NEGOTIABLE INSTRUMENT—BONA FIDE PURCHASER—A creditor who receives from his debtor the bill or note of a third party, either in payment or as collateral security for his debt, is entitled to the same protection as a *bona fide* holder for value, and he takes it free from all equities which might have been pleaded between the original parties.

APPEAL from the Circuit Court of Richland county; the Hon. JOHN H. HALLEY, Judge, presiding.

Messrs. CANBY & EKEY, for appellant; that the legal title to the notes was never in Beaird, and could not be transferred by a separate instrument, cited Ryan v. May, 14 Ill. 49; Fortier v. Darst 31 Ill. 212.

None but the legal owner can maintain trover for a chose in action: Webster v. Heylman, 11 Mo. 428.

Mr. B. B. SMITH and Mr. F. D. PRESTON, for appellee; that the contract of bailment may give rise to a claim for a tort or wrong, cited 1 Hilliard on Torts, 26; Grant v. King, 14 Vt. 367; Lovejoy v. Jones, 10 Foster, 164; Whittock v. Heard, 13 Ala. 776.

Trover will lie for a note in the hands of a third person: Ford v. Cruikshanks, 3 Johns. 432; Bissell v. Drake, 18 Johns. 66.

ALLEN, J. This was an action of trover brought by appellee against appellant for the recovery of the value of certain promissory notes claimed by appellee, which he charged appellant with converting to its own use. A jury was waived and the evidence heard by the judge, and a judgment for appellee for $2060 and costs. From that judgment an appeal was taken to this court. The evidence shows that in a settlement between appellee and one Henry Marshall, made about May, 1877, Marshall indorsed these notes over to appellant in part payment of a debt or claim appellee held on him. There were four notes signed by S. Cahill, dated January 19, 1877, aggregating $660, and five notes by J. N. Connour, amounting, in the aggregate, to $785, and five notes given by J. N. Connour for $100 each, all payable to Henry Marshall, all bearing eight per cent. interest, and all given for lands sold by Henry Marshall to the payees. The notes ran from one to five years from date. To some of the lands deeds were executed by Marshall and handed over with the notes to appellee, to be delivered when notes were paid. In March 5, 1878, notice was served on appellant by appellee that appellee claimed certain of the notes above described, and some others described in the notice, and in the plaintiff's declaration. On the trial appellee testified that he and Marshall had

a land trade, and that Marshall had given him the notes described in the declaration in consideration of one-half of a farm in Richland county, and a tract of land in Florida; that no title passed at the time, but that afterward he deeded the Florida tract to appellant under the direction of Marshall; that after land trade he and Marshall got Cahill to change notes and make them payable to himself instead of Marshall; that Marshall was cashier of appellant at the time; he, appellee, never had the notes in his possession; left them with Marshall to collect and pay over to appellee. Notes were not assigned to appellee. S. Cahill testifies that at Marshall's request he changed his original notes for the land and made them payable to appellee, and that about a year ago Windsor brought notes to him and had him take up his notes payable to appellee, and execute others payable to Marshall again; that he never had anything to do with the bank (appellant); dealt with Marshall individually. J. N. Connour bought land of Marshall; made notes payable to Marshall; Marshall afterward wanted to change them and make them payable to Beaird; he, witness, refused to do so; afterward found his note in hands of appellant; appellant gave him deed for land that Marshall made him. Never had any other dealing with the bank.

J. N. Connour testifies: Bought land of Henry Marshall, gave him my notes last year; paid these notes to Henry Spring and he gave me deed.

S. B. Winsor testified: Last spring Marshall got me to go to Cahill and give him deed and take a mortgage on land, and take new notes payable to Marshall; Marshall said the notes belonged to him then, and he wanted to turn them over to the bank.

Henry Spring testified that he was a director in bank; Marshall delivered the Cahill and Connour notes to him for the bank; notes were indorsed to bank when delivered; were delivered in May, 1877; indorsement was in Marshall's handwriting; was familiar with it; knew nothing of trade between Marshall and Beaird; Marshall kept some private papers in the bank—perhaps some in safe; notes were turned over by Marshall to bank directors in discharge of his liability to bank on settlement.

Wm. Newell testified: Have been a director and vice-president of the bank for several years; knew nothing of the trades between Marshall and Beaird; the bank had nothing to do with them; could not have unless the matter had been brought before the directors; the notes in question were never entered on books of bank for collection; the notes were turned over to bank by Marshall in part discharge of his liability to bank after the bank trouble. Marshall had been cashier of bank, but had been discharged last spring.

It is apparent from the testimony of appellee that these notes were never transferred by Marshall to him; that they were left in the control of Marshall. They were negotiable paper, and when they passed into the hands of innocent purchasers for a valuable consideration, the assignees would be protected from any claim appellees might have to them, or to the value of them, as against the holder. There is nothing in all this evidence to take this case out of the well-established rule that protects a *bona fide* assignee of commercial paper. Appellee, in his argument, insists that appellant ought not to be regarded as a "*bona fide*" holder for value, because the notes were received by appellant for a debt or defalcation of Marshall as cashier of the bank, but an examination of authorities will dissipate this idea. Daniel on Negotiable Instruments, page 145, expresses the doctrine very happily when he says: "The best considered, as well as the most numerous, authorities regard the creditor who receives the bill or note of a third party from his debtor, either in payment of or as collateral security for his debt, as entitled to the full protection of a *bona fide* holder for value, free from all equities which might have been pleaded between the original parties;" and the same doctrine again on page 586, § 780.

This doctrine we regard as conclusive of this case, as it is presented by this record. No notice of any claim upon these notes by appellee is brought home to appellant before, at the time of transfer of the notes to it, or for ten months afterward. The evidence does not tend to show that Marshall held these notes as cashier of appellee. They were not upon the books of appellee for collection. Indeed, it would be much out

of the usual course of business for a bank to receive and keep for collection at their risk notes of this character, a majority of which had several years to run before they matured. And while it may be a hardship on appellee to lose the notes, yet he, like all others, must be subjected to the well-settled rule of law, "that when one of two innocent parties must suffer loss, the loss must fall upon the one first in fault."

He lost his notes by leaving them with Marshall without indorsement or any writing or entry by which their ownership could be determined. He left it in Marshall's power to deceive others as to his ownership. The bank accepted them in satisfaction of a debt due it, and is protected just as others are protected who receive commercial paper. There are some other questions raised in the argument of counsel, but we shall not stop to consider them. We believe under the evidence in this case the verdict should have been for the defendant.

<div align="right">Reversed and remanded.</div>